

IN THE UNITED STATES BANKRUPTCY COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

ENTERED
08/08/2012

| In re: | § | |
|---|---|---|
| | § | Case No. 09-35864 |
| JOSEPH K. WATTS, | § | (Chapter 13) |
| ANGELA M. WATTS, | § | |
| | § | |
| Debtors. | § | |
| | § | |

**MEMORANDUM OPINION ON TRUSTEE'S MOTION
TO DISMISS WITH PREJUDICE**
[Docket No. 131]

## I. INTRODUCTION

Joseph K. Watts and Angela M. Watts (the Debtors) filed a Chapter 7 petition on August 10, 2009 and thereafter voluntarily converted the case to Chapter 13 on March 1, 2010. This Court confirmed the Debtors' Chapter 13 Plan on March 7, 2011. On February 6, 2012, the Debtors filed a malpractice claim in state court against their Chapter 7 attorney, listing themselves and the Chapter 13 Trustee (the Trustee) as plaintiffs. The Debtors did not disclose the malpractice claim as an asset on their Chapter 13 schedules, nor did they have authority to name the Trustee as a plaintiff in the suit. As a result of their conduct, the Trustee, on April 4, 2012, filed a motion to dismiss the Debtors' bankruptcy case with prejudice. The Debtors filed their response to the Trustee's motion to dismiss on April 24, 2012, and the Court held a hearing on April 30, 2012. The Court then took the matter under advisement.

Based on the entire record, the Court now makes the following written findings of fact and conclusions of law pursuant to Bankruptcy Rules 7052 and 9014. To the extent any finding of fact is construed as a conclusion of law, it is adopted as such; and to the extent any conclusion

of law is construed as a finding of fact, it is adopted as such. The Court reserves the right to make any additional findings and conclusions as it deems appropriate.

## II. FINDINGS OF FACT

1. The Debtors voluntarily filed a Chapter 7 petition on August 10, 2009. [Doc. No. 1].

2. Debtor Joseph K. Watts (Watts) is an attorney licensed to practice law in the state of Texas. [Tape Recording, 1/10/2011 Trial at 6:41:15 – 6:41:21]. Watts received his law degree in 1997. [Tape Recording, 1/10/2011 Trial at 6:45:04 – 6:45:10]. Watts' practice is primarily commercial litigation. [Tape Recording, 1/10/2011 Trial at 6:41:25 – 6:41:32]. Watts has worked first as an employee of and then as a contract lawyer for the Adair & Myers law firm. [Tape Recording, 9/30/2011 Trial at 2:13:39 – 2:39:47] [Tape Recording, 1/10/2011 Trial at 6:59:52 – 7:00:05]. He has worked for Adair & Myers since November 1, 2007. [Tape Recording, 1/10/2011 Trial at 6:45:29 – 6:45:37].

3. On March 1, 2010, the Debtors voluntarily converted their Chapter 7 case to a Chapter 13 case. [Doc. No. 19]. On their original Schedule B, which the Debtors filed on March 16, 2010, the Debtors represented to this Court and their creditors that they had no claims or causes of action against anyone.[1] [Doc. No. 23].

4. On March 17, 2010, the Debtors filed a Motion to Substitute Attorney. [Doc. No. 25]. The Debtors replaced Barbara M. Rogers (Rogers), their Chapter 7 attorney, with Marjorie Payne Britt (Britt) because Rogers does not handle Chapter 13 cases. [*Id.*]. On April 20, 2010, this Court signed the order granting the Motion to Substitute Attorney. [Doc. No. 37].

---

[1] Schedule B, item 21 expressly requires the disclosure of "[o]ther contingent and liquidated claims of every nature." In completing this item, the Debtors affirmatively put an "x" under the column "NONE"—which means that they affirmatively represented that they had no causes of action—when they should have scheduled their cause of action against Rogers.

5. Almost one year later—on March 7, 2011—this Court confirmed the Debtors' Chapter 13 Plan (the Plan), which calls for a 100% payout to all creditors and the Plan payments to be made over sixty months. [Doc. Nos. 95 & 106]. The Plan does not, however, provide for interest to be paid on claims held by unsecured creditors.[2] [Doc. No. 95]. The Plan also expressly states that "[p]roperty of the estate shall vest in the debtors upon entry of the discharge order." [*Id.*].

6. Eleven months after the Court confirmed the Plan—on February 6, 2012—the Debtors filed a malpractice claim (the Claim) in state court against their Chapter 7 attorney, Rogers. [Adv. No. 12-03156, Doc. No. 1-1]. Watts signed the original petition initiating the Claim as "Attorney for Plaintiffs." [*Id.*]. The petition listed the Debtors and the Trustee as plaintiffs. [*Id.*]. However, the Chapter 13 Trustee had <u>not</u> given Watts permission to represent him in this state court lawsuit. The Claim alleged that Rogers provided inadequate counsel while advising the Debtors how to file their bankruptcy schedules. [*Id.*]. This alleged poor advice culminated in the Debtors filing incorrect and incomplete Schedules. [*Id.*]. The Claim alleged that during a deposition of the Debtors conducted by the U.S. Trustee, Rogers suggested that the Debtors voluntarily convert their case to Chapter 13 to avoid prosecution for perjury by the U.S. Attorney's Office. [Adv. No. 12-03156, Doc. No. 1-1]. Consequently, the Debtors suffered damages because they were unable to discharge their debt in Chapter 7. [*Id.*].

7. On February 14, 2012, Britt, the Chapter 13 attorney for the Debtors, sent an email to the Chapter 13 Trustee setting forth that the Debtors had a legal malpractice claim against

---

[2] The Plan provides for 5.75% interest to be paid to secured creditors, but no interest is to be paid on unsecured claims. [Doc. No. 95].

3

Rogers and that they wanted the Trustee's authorization to proceed to prosecute this malpractice claim. Later in the day, the Chapter 13 Trustee responded by sending an email back to Britt setting forth that the Trustee was not opposed to the Debtors pursuing this claim "as long as the proper disclosures are made and filed in the bankruptcy case." The next day, February 15, 2012, Britt filed this email exchange with the Clerk of Court. [Doc. No. 128].

8. Before filing the Claim, the Debtors did not amend their original Schedule B to disclose the Claim as an asset of their Chapter 13 estate. [*See* Doc. No. 23] (which is the original Schedule B showing that the Debtors hold no claims or causes of action). Aside from failing to amend their Schedule B to disclose the Claim, the Debtors did not disclose to the Trustee that Watts had already filed an original petition in state court to prosecute the Claim naming the Trustee, in addition to the Debtors, as plaintiffs and signing his (i.e. Watts') name on the petition as counsel for both the Debtors and the Trustee. The Debtors did not disclose the Claim to the Court until over a month after filing the original petition in state court. [Doc. No. 133].

9. On March 11, 2012—almost two years after the accrual of the Debtors' cause of action against Rogers and over a month after filing the claim in state court—the Debtors finally filed their "Amended Schedule B Reporting Causes of Action Acquired Post-petition." [*Id.*]. The Amended Schedule B lists both the Claim and the claim for an improperly retained lease deposit as contingent and unliquidated claims. [*Id.*].

10. On March 23, 2012, Rogers removed the Claim to this Court, and the Clerk of Court assigned Adversary Proceeding No. 12-03156 to the Claim. [Adv. No. 12-03156, Doc. No. 1]. Three days later—on March 26, 2012—Rogers also filed a Motion to Dismiss the Claim on the grounds that the Debtors had no standing to file suit, the Debtors improperly served

4

Rogers, and the Claim was time barred. [Adv. No. 12-03156, Doc. Nos. 3 & 4]. Thereafter, the Court held a hearing on May 31, 2012; the Debtors did not appear at the hearing; and then the Court entered an order dismissing the Claim on the same day. [Adv. No. 12-03156, Doc. No. 22].

11. On April 26, 2012, the Trustee filed a Motion for Sanctions under Bankruptcy Rule 9011, alleging that "[t]he Debtors named the Trustee as a plaintiff in the [Claim] without the Trustee's permission to name him as a party plaintiff or his knowledge that he would be named as a party plaintiff." [Adv. No. 12-03156, Doc. No. 11]. Thereafter, the Debtors filed a Response to the Motion for Sanctions; the Court held a hearing on June 18, 2012; and the Court granted the Motion for Sanctions in an order that it issued on June 25, 2012. [Adv. No. 12-03156, Doc. Nos. 29 & 34].

12. On April 4, 2012, before the Court dismissed the Claim, the Trustee filed "Chapter 13 Trustee's Motion to Dismiss Case with Prejudice" (the Motion to Dismiss). [Doc. No. 131]. The Trustee alleges that the Debtors failed to disclose all of their assets, most notably the Claim. [*Id.*]. The Trustee further alleges that because the Claim accrued before the Debtors converted to Chapter 13, the claim became property of the Chapter 13 estate once conversion occurred. [*Id.*].

13. On April 23, 2012, the Debtors filed their response to the Trustee's "Motion to Dismiss Debtor's Bankruptcy with Prejudice." [Doc. No. 134]. The response alleges that the Debtors did not immediately know they owned the Claim and did not know when the Claim accrued. [*Id.*].

14. On April 30, 2012, this Court held a hearing on the Motion to Dismiss. The Court continued the hearing until July 23, 2012.

5

15. On June 16, 2012, the Debtors filed their supporting "Brief Regarding Trustees Motion to Dismiss with Prejudice." [Doc. No. 143].

16. On July 23, 2012, both parties rested, and this Court took the matter under advisement and announced that it would make a ruling on August 6, 2012.

17. On August 6, 2012, this Court orally announced its ruling on the record. This memorandum opinion memorializes this oral ruling.

### III. CONCLUSIONS OF LAW

**A. Jurisdiction, Venue, and Constitutional Authority to Sign a Final Order**

1. Jurisdiction

This Court has jurisdiction over this contested matter pursuant to 28 U.S.C. §§ 1334(b) and 157(a). This contested matter is a core proceeding pursuant to 28 U.S.C. §157(b)(2)(A) and (O), and the general "catch-all" language of 28 U.S.C. § 157(b)(2). *See In re Southmark Corp.*, 163 F.3d 925, 930 (5th Cir. 1999) ("[A] proceeding is core under section 157 if it invokes a substantive right provided by Title 11 or if it is a proceeding that, by its nature, could arise only in the context of a bankruptcy case.").

2. Venue

Venue is proper pursuant to 28 U.S.C. § 1408.

3. Constitutional Authority

In wake of the Supreme Court's ruling in *Stern v. Marshall*, 131 S.Ct. 2594 (2011), this Court must also evaluate whether it has the constitutional authority to sign a final order adjudicating the dispute at bar. In *Stern*, the Supreme Court held that 28 U.S.C. § 157(b)(2)(C)—which authorizes bankruptcy judges to issue final orders on counterclaims brought by a debtor's estate—is an unconstitutional delegation of Article III authority to

bankruptcy judges, at least when the dispute being adjudicated is based solely on state common law and does not affect the claims adjudication process. 131 S.Ct. at 2616.

The dispute at bar is not a counterclaim; it is a motion to dismiss arising from the Debtors' failure to disclose the Claim and from their prosecution of the Claim in the Trustee's name without his permission. A dispute involving failure to disclose an asset involves purely bankruptcy law; namely, § 541,[3] Bankruptcy Rule 1007(b)(1)(A), and judicially-created law on inadvertent disclosure. There is no state law concerning a debtor's duty to disclose assets to the bankruptcy estate; this is an issue of pure bankruptcy law. Moreover, the pleading pending before this Court is the Motion to Dismiss. The statute governing this motion is § 1307(c). There is no state law equivalent to this statute; therefore, once again, solely bankruptcy law governs the Motion to Dismiss. Accordingly, for all these reasons this Court has the constitutional authority to enter a final order in this dispute.

**B. The Debtors' Failure to Timely Disclose the Claim and Failure to Obtain Authorization from the Trustee to Name Him as a Party Plaintiff and Represent Him in the State Court Law Suit Constitutes Sufficient Bad Faith to Warrant Dismissal of the Case with Prejudice.**

1. <u>Bad Faith Conduct is Grounds for Dismissal with Prejudice.</u>

This Court has stated that the purpose of the Code is to afford the honest but unfortunate debtor a fresh start, not to shield those who abuse the bankruptcy process. *In re Thalmann*, 469 B.R. 677, 681 (Bankr. S.D. Tex. 2012) (citing *In re Nassar*, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998)); *see also In re Luongo*, 259 F.3d 323, 330 (5th Cir. 2001) ("The bankruptcy court's responsibility in administering the estate is . . . to 'relieve the honest debtor from the weight of

---

[3] Unless otherwise noted, all section references refer to 11 U.S.C. and all references to the "Code" or the "Bankruptcy Code" refer to the United States Bankruptcy Code. References to a "Rule" or "Bankruptcy Rule" refer to the Federal Rules of Bankruptcy Procedure.

oppressive indebtedness and permit him to start afresh.'") (quoting *Local Loan v. Hunt*, 292 U.S. 234, 244 (1934)). Section 1307(c) provides that the Court may dismiss a Chapter 13 case for cause. Lack of good faith constitutes cause for purposes of § 1307(c). *See, e.g., In re Fonke*, 310 B.R. 809, 815 (Bankr. S.D. Tex. 2004) (finding that the debtor lacked good faith in filing his bankruptcy petition, and therefore, cause existed under § 1307 to convert debtor's case to a case under Chapter 7); *Toles v. Powers*, 1999 WL 1261453 at *3 (N.D.Tex.1999) (noting that "bad faith constitutes cause for either dismissal or conversion under Section 1307(c)").

To determine whether a debtor acted in good faith, courts employ a "totality of the circumstances" analysis with the determination made on a case-by-case basis. *Id.*; *see also In re Beard*, 84 F.3d 431 (5th Cir. 1996); *In re Love*, 957 F.2d 1350 (7th Cir.1992); *In re Chaffin*, 836 F.2d 215 (5th Cir. 1988); *In re Nassar*, 216 B.R. 606 (Bankr. S.D. Tex. 1998); *In re Aichler*, 182 B.R. 19 (Bankr. S.D. Tex. 1995). The good faith analysis "force[s] the bankruptcy court to examine 'whether or not under the circumstances of the case there has been an abuse of the provisions, purpose, or spirit of [the Chapter]. . . .'" *In re Love*, 957 F.2d 1350, 1357 (7th Cir. 1992).

The bankruptcy court also has discretion to dismiss with prejudice to the refiling of a subsequent Chapter 13 case. 11 U.S.C. §§ 105 & 349(a). Bad faith is sufficient to warrant dismissal with prejudice. *See, e.g., In re Stathatos*, 163 B.R. 83 (N.D. Tex. 1993) (upholding a dismissal with prejudice of a Chapter 13 case where the debtors' actions amounted to bad faith); *In re Nassar*, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998) (dismissing with prejudice a Chapter 13 case where the debtor's failure to provide accurate schedules was bad faith); *In re Aichler*, 182 B.R. 19, 22 (Bankr. S.D. Tex. 1995) (dismissing with prejudice a Chapter 13 case where the totality of the circumstances showed bad faith).

2. <u>The Claim is Property of the Chapter 13 Estate, and the Debtors' Failure to Fulfill Their On-Going Duty to Disclose Assets until Discharge Constitutes Bad Faith.</u>

The Trustee argues that: (1) the Claim is property of the Debtors' Chapter 13 estate; and (2) because the Claim is property of the estate, the Debtors needed to timely disclose it. [Finding of Fact No. 12]. The Debtors assert that there is no statutory requirement to amend "Chapter 13 schedules to list assets acquired after the filing of the case." [Doc. No. 143, p. 4]. This assertion misstates the law.

The bankruptcy estate is comprised of "all legal or equitable interests of the debtor in property as of the commencement of the case." 11 U.S.C. § 541(a)(1). Courts broadly construe the phrase "all legal or equitable interests of the debtor in property," to include "rights of action" such as claims based on state or federal law. *In re Seven Seas Petroleum, Inc.*, 522 F.3d 575, 584 (5th Cir. 2008). Further, in a Chapter 13 case "property of the estate includes, in addition to the property specified in § 541 of this title, all property of the kind specified in [§ 541] that the debtor acquires after the commencement of the case but before the case is closed, dismissed, or converted . . . ." 11 U.S.C. § 1306(a). Here, the Claim arose after the commencement of the Debtors' case. [Finding of Fact Nos. 1, 3, & 6]. Thus, there is no question that the Claim is property of the estate.

Nor can the Debtors contend that § 1327(b) turns the Claim into property of the Debtors, as opposed to property of the estate. Granted, § 1327 states that "[u]nless the plan states otherwise, <u>the confirmation of the plan vests all of the property of the estate in the debtor.</u>" 11 U.S.C. § 1327(b) (emphasis added); *In re Rodriguez*, 421 B.R. 356, 373 (Bankr. S.D. Tex. 2009). Here, however, the Plan <u>does in fact state otherwise</u>. Specifically, it states that "[p]roperty of the estate shall vest in the debtors <u>upon entry of the discharge order</u>." [Finding of Fact No. 5] (emphasis added). This Court has not yet issued a discharge order because the Debtors have not

yet completed their Plan payments. Therefore, a Chapter 13 estate still exists in this case, and this estate—not the Debtors—has title to all non-exempt assets. The Claim is a non-exempt asset. *See In re Walker*, 323 B.R. 188, 198 (Bankr. S.D. Tex. 2005) (holding a cause of action to be a non-exempt asset). Thus, this Court concludes that the Claim is property of the estate because the Debtors acquired the Claim before the bankruptcy case was closed, discharged or converted and because the Plan does not vest the Debtors with the estate property <u>until</u> discharge.

Because the Claim is property of the Debtors' Chapter 13 estate, they have a duty to disclose it on their Schedule B. "The duty of disclosure in a bankruptcy proceeding is a continuing one,[4] and a debtor is required to disclose all potential causes of action." *In re Coastal Plains, Inc.*, 179 F.3d 197, 208 (5th Cir. 1999). "The Debtor's express, affirmative duty to disclose all assets, including contingent and unliquidated claims and/or causes of action, is a continuing one and cannot be overemphasized." *In re Bilstat, Inc.*, 314 B.R. 603, 608 (Bankr. S.D. Tex. 2004).

Thus, § 1306(a), § 541, and case law obligated the Debtors to timely disclose the Claim and amend their Schedule B. They did not do so. [Finding of Fact No. 8]. Rather, they filed suit in state court without first amending their Schedule B and also without seeking the Trustee's approval to name him as a party plaintiff in that suit. [Finding of Fact No. 11]. Their two-fold failure demonstrates bad faith and warrants dismissal of this case. *See, e.g., In re Stathatos*, 163

---

[4] One commentator explains the rationale behind the continuing duty to disclose assets throughout the bankruptcy process, stating that "[t]he disclosure obligation continues throughout the case and requires the debtor to amend its schedules whenever it becomes necessary in order to insure the accuracy and reliability of the information disclosed therein." Famose T. Garner, *Putting the Honest Back in "Honest but Unfortunate Debtor": A Debtor's Duty to Report A Beneficial Change in Circumstances*, 47 HOUS. L. REV. 105, 124 (2010) (internal quotations and citations omitted).

B.R. 83 (N.D. Tex. 1993) (upholding a dismissal with prejudice of a Chapter 13 case where the debtors' actions amounted to bad faith); *In re Nassar*, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998) (dismissing with prejudice a Chapter 13 case where the debtor's failure to provide accurate schedules was bad faith); *In re Aichler*, 182 B.R. 19, 22 (Bankr. S.D. Tex. 1995) (dismissing with prejudice a Chapter 13 case where the totality of the circumstances showed bad faith).

3. The Debtors' Nondisclosure Was Not Inadvertent, but Rather is a Show of Bad Faith.

The Debtors excuse their failure to disclose the Claim by alleging that they did not know that they actually had a cause of action against Rogers until the latter half of 2011. [Doc. No. 143, p. 3].[5] The Debtors cite *In re Coastal Plains, Inc.*, 179 F.3d 197, 212 (5th Cir. 1999) to argue that their failure to timely disclose the Claim was "inadvertent." The Court finds that this argument lacks merit.

In *Coastal*, the successor to a corporate debtor sued one of the debtor's product suppliers for breach of contract, in addition to several other claims. *Id.* at 203–04. The debtor company had never disclosed these claims in its bankruptcy case. *Id.* at 202. The products supplier asserted judicial estoppel, but the bankruptcy court rejected the argument. *Id.* at 204. On appeal, the Fifth Circuit held that judicial estoppel prevented the successor from proceeding with the debtor's undisclosed claims and rendered judgment in favor of the products supplier. *Id.* at 212. The Fifth Circuit refused to label the debtor's nondisclosure as inadvertent because the debtor "both knew of the facts giving rise to its inconsistent positions, and had a motive to conceal the claims." *Id.* The Fifth Circuit held that "in considering judicial estoppel for bankruptcy cases,

---

[5] In their brief, the Debtors represent the following: "In the present case, Joseph Watts testified that he was not immediately aware that he and his wife might possess a malpractice claim and that he felt no actual assurance on that point until he had discussed the matter with an attorney practicing in that field."

the debtor's failure to satisfy its statutory disclosure duty is 'inadvertent' only when, in general, the debtor either lacks knowledge of the undisclosed claims or has no motive for their concealment." *Id.* at 210; *see also Reed v. City of Arlington*, 650 F.3d 571, 574 (5th Cir. 2011). Neither consideration relieves the Debtors of their burden in the instant case.

    i.   *The Debtors Knew of the Facts Giving Rise to Their Inconsistent Positions.*

Here, like the debtor in *Coastal*, the Debtors also knew of the facts giving rise to their inconsistent position, i.e. the Debtor knew of the facts forming the basis of the Claim, yet did not timely disclose the Claim. Joseph Watts declares he was not immediately aware that his wife and he actually had a claim against Rogers. [Finding of Fact No. 13]. This Court finds it hard to believe that Watts, a licensed trial attorney for approximately fourteen years, did not quickly recognize the basic elements of a negligence cause of action against Rogers. Indeed, the very basis of the Claim is that: (1) Rogers negligently counseled them about filing their schedules in the Chapter 7 case; (2) which led them to file schedules that caused the U.S. Trustee to pose several questions to the debtors at a deposition; (3) which, in turn, caused Rogers to suggest to them that they convert to Chapter 13 to avoid prosecution for perjury by the U.S. Attorney; (4) and which then harmed the Debtors by denying them a Chapter 7 discharge. [Finding of Fact No. 6]. All of these events occurred between August 10, 2009 (i.e. the date of the filing of the Chapter 7 petition) and March 1, 2010 (i.e. the date of the conversion from Chapter 7 to Chapter 13). [Finding of Fact Nos. 1 & 3]. Yet, the Debtors want this Court to believe that they did not know that they had a claim until the latter part of 2011—over a year later! The Court finds this position lacking credibility.

A review of the petition that Watts filed in state court against Rogers (in Section V, entitled Factual Allegations) is strewn with allegations about Rogers' negligence during various

events occurring between August 10, 2009 and March 1, 2010. Indeed, paragraphs 5.14 and 5.15 of the petition underscore that as of February 4, 2010, Watts believed Rogers had committed malpractice. In paragraph 5.14, the petition filed by Watts alleges that Rogers informed his wife and him during a break at the deposition held on February 4, 2010 that the Debtors needed to convert to Chapter 13. Then, in paragraph 5.15, Watts wrote the following: "When Watts questions Defendant [i.e. Rogers] about why Defendant told Watts that not having filed the Amended Schedules was not a problem, Defendant made up some excuse that she did not realize that the U.S. Trustee wanted the deposition for the purposes stated above." This very language indicates that Watts had heightened suspicion about Rogers' conduct at the February 4, 2010 deposition. For this reason, the Debtors, when they filed their original Schedule B on March 16, 2010 in their converted Chapter 13 case, should have scheduled the Claim. Their failure to do so constitutes bad faith.

Indeed, even if this Court were to believe the Debtors that they did not come around to believing they had a malpractice cause of action against Rogers until the second half of 2011, the Debtors still failed to make this disclosure at that time. They only amended their Schedule B to disclose the Claim on March 11, 2012, which was one month after Watts had filed the lawsuit prosecuting the Claim in state court. [Finding of Fact No. 9]. Thus, at the time Watts filed the petition in state court representing to that court that the Debtors had a cause of action against Rogers, they were still representing to this Court that they had no cause of action Rogers. Thus, this Court finds the Debtors knew of the facts giving rise to their inconsistent position.

  ii. *The Debtors Had Motive to Conceal the Claim.*

In alleging inadvertence, the Debtors also profess they had no motive to conceal the Claim. [Doc. No. 143]. In *Love v. Tyson Foods, Inc.*, Love asserted federal claims under Title

13

VII of the Civil Rights Act of 1964, alleging his former employer violated Equal Employment Opportunity Commission regulations. *Love v. Tyson Foods, Inc.*, 677 F.3d 258, 260 (5th Cir. 2012). When he filed his discrimination suit, Love was a debtor in a Chapter 13 proceeding. *Id.* at 260. Like the Debtors in the case at bar, Love did not amend his Schedule B to include the contingent claim before he filed suit. *Id.* at 261. Love's sole argument on appeal was that his failure to disclose his claims was inadvertent; yet, he failed to establish he had no motive to conceal given the benefit he stood to gain by his nondisclosure. *Id.* at 261. The Fifth Circuit affirmed the district court's decision that judicial estoppel prevented the debtor from pursuing his discrimination claim. *Id.* at 266. In *Love*, the Fifth Circuit articulated a very high standard for any debtor to show that he had no motive to conceal. *Id.* The Fifth Circuit declared that the "motivation sub-element is <u>almost always</u> met if a debtor fails to disclose a claim or possible claim to the bankruptcy court. Motivation in this context is self-evident because of potential financial benefit resulting from nondisclosure." *Id.* at 262 (emphasis added). Thus, it will almost always be the case that nondisclosure automatically equates to an affirmative motive to conceal.

The Fifth Circuit left the door only slightly open for a debtor to overcome this high hurdle. With its use of the words "almost always," the Fifth Circuit left open the possibility that certain circumstances could exist where nondisclosure does not automatically constitute motive; however, the Fifth Circuit did not elaborate on these circumstances. Presumably, this exception to the general rule is left to the sound discretion of the bankruptcy court while considering the one factor the Fifth Circuit provided–the relative intent at the time of nondisclosure. In exercising this discretion, however, this Court is mindful of the strict standard that the Fifth Circuit has promulgated.

14

Here, the Debtors fail to fit within the very narrow exception to the general rule articulated in *Love*. The Debtors' nondisclosure of the Claim occurred for almost two years. [Finding of Fact No. 6]. Further, disclosure was certainly not made when this Court confirmed the Plan. The Plan provides for 100% repayment of all claims, but these claims are being paid out over five years, and the Plan does not provide for payment of interest on those claims. [Finding of Fact No. 5]. Had the Debtors disclosed the Claim prior to confirmation, both the Trustee and the creditors would have had the opportunity to object to the Plan on the grounds that the Claim, if successful, would generate enough funds to pay interest on claims; and that the Plan, as proposed, should not be confirmed, when it was not filed in good faith–i.e. the projected disposable income available for unsecured claims would be higher if the Debtors modified the Plan to include use of any proceeds generated from the Claim to pay interest on the creditors' claims under § 1329(a)(3). *See* § 1325(a)(3) (". . . the court shall confirm a plan if–the plan has been proposed in good faith . . ."). By failing to disclose the Claim, the Debtors obtained confirmation of the Plan without having to pay interest.[6]  Additionally, if the Claim remained undisclosed and was successful, the Debtors stood ready to receive a windfall settlement as named plaintiffs. This outcome is not equitable. The Debtors' attempt to secure this outcome constitutes bad faith. Thus, this Court finds the Debtors had the requisite motive not to disclose the Claim, and the Debtors' failure to disclose the Claim was not inadvertent.

---

[6] "Where a debtor is solvent it is undisputed that unsecured creditors are entitled to interest on their claims." *In re Schoeneberg*, 156 B.R. 963, 970 (Bankr. W.D. Tex. 1993).

15

    4.   <u>Debtor Joseph K. Watts Neither Obtained Authorization from the Chapter 13 Trustee for Watts to Name the Trustee as a Party Plaintiff in the Suit Against Rogers Nor Received Approval from the Trustee to Represent Him in This Suit.</u>

The Debtors also allege they "made ample disclosure under the circumstances, even going to the length of listing the Trustee as a Plaintiff in [the Claim]." [Doc. No. 143, p. 5–6]. The Court finds this argument to be of no avail. The Code does not specify that merely listing a trustee as a plaintiff in a state court lawsuit is sufficient disclosure of that suit to the trustee or to the creditors. Rather, § 521 dictates that a debtor shall file, unless the court orders otherwise, a schedule of assets and liabilities within fourteen days after conversion. 11 U.S.C. § 521(a)(1). The Debtors did not amend their Schedule B to disclose the Claim until after they had filed the lawsuit in state court prosecuting the Claim. [Finding of Fact Nos. 6 & 8].

Moreover, Watts filed the Claim in state court listing the Trustee as a party plaintiff. [Finding of Fact No. 6]. Watts took this action even though the Trustee had never consented to being a plaintiff in the state court suit. [Finding of Fact No. 11]. Further, Watts signed the petition in the state court suit representing to that court that he was the attorney for the Trustee. [Finding of Fact No. 6]. A lawyer who purports to represent a party without authorization violates Rule 3.03(a)(1) of the Texas Disciplinary Rules of Professional Conduct, that prohibits a lawyer from knowingly making a false statement of material fact or law to a tribunal. *See Teter v. Comm'n For Lawyer Discipline*, 261 S.W.3d 796, 800 (Tex. App.—Dallas 2008, no pet.) (holding that a lawyer purporting to represent a party the lawyer does not represent is false and fraudulent document filing, sufficient to support summary judgment for a violation of Rule 3.03(a)(1)); Tex. Disciplinary R. Prof'l Conduct 3.03(a)(1). The Court finds that the Watts' actions relating to the state court suit constitute further proof of their bad faith rather than ample disclosure.

## IV. CONCLUSION

Section 1307 states that the court may dismiss a case under this chapter for cause and provides a non-exclusive list of eight circumstances that constitute cause. Lack of good faith constitutes cause for purposes of § 1307(c). *In re Fonke*, 310 B.R. 809, 815 (Bankr. S.D. Tex. 2004). Considering the totality of the circumstances, this Court concludes that the Debtors lacked good faith in their bankruptcy proceedings, and thus, cause exists to dismiss this case. Without amending their Schedule B, the Debtors pursued the Claim in state court, fraudulently listing the Trustee as a party plaintiff and misrepresenting to the state court that Watts was counsel of record for the Trustee and was authorized to prosecute the Claim on behalf of the Trustee. The Debtors breached their duty to disclose all of their assets and to be truthful to the Trustee. *In re Walker*, 323 B.R. 188, 198 (Bankr. S.D. Tex. 2005) ("The integrity of the bankruptcy system rests on full and honest disclosure by debtors of all of their assets.") (quoting *Rosenshein v. Kleban*, 918 F.Supp. 98, 104 (S.D.N.Y.1996)). Each of these occurrences underscores the Debtors' bad faith.

Additionally, the bankruptcy court has discretion to dismiss with prejudice to the refiling of a subsequent bankruptcy petition. 11 U.S.C. §§ 105, 349(a); s*ee, e.g., In re Stathatos*, 163 B.R. 83 (N.D. Tex. 1993) (upholding a dismissal with prejudice of a Chapter 13 case where the debtors' actions amounted to bad faith); *In re Nassar*, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998) (dismissing with prejudice a Chapter 13 case where the debtor's failure to provide accurate schedules was bad faith); *In re Aichler*, 182 B.R. 19, 22 (Bankr. S.D. Tex. 1995) (dismissing with prejudice a Chapter 13 case where the totality of the circumstances showed bad faith).

For all of the reasons set forth above, the Court concludes that the instant case should be dismissed with prejudice to the filing of another case under Title 11 for 180 days after entry of

this order on the docket. § 109(g)(1); *see also In re Nassar*, 216 B.R. 606, 608 (Bankr. S.D. Tex. 1998) (citing § 109(g)(1) as authority to dismiss a Chapter 13 case with prejudice for 180 days because the debtor failed to provide complete and accurate schedules). An Order consistent with this Memorandum Opinion will be entered on the docket simultaneously with the entry of this Opinion.

Signed on this 8th day of August, 2012.

Jeff Bohm
Chief United States Bankruptcy Judge